UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SIMONE ANGELLA ROBERTS,

Petitioner,

v.

BRUCE SCOTT, Warden, Northwest Immigration and Customs Enforcement Processing Center, and MARKWAYNE MULLIN,

Respondents.

CASE NO. 2:26-cv-01333-TL

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

This matter is before the Court on Petitioner's Petition for a Writ of Habeas Corpus ("habeas petition"). Dkt. No. 1. Having considered the Petition, Respondent's return memorandum (Dkt. No. 4), Petitioner's traverse (Dkt. No. 7), Plaintiff's Statement of Additional Grounds (Dkt. No. 11), Respondent's response (Dkt. No. 12), and the relevant record, the Court GRANTS IN PART AND DENIES IN PART the habeas petition and ORDERS Petitioner's release.[1]

---

[1] Where used in the singular, "Respondent" refers to Respondent Mullin. Respondent Scott has not appeared.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 1

## I.    BACKGROUND

Petitioner Simone Angella Roberts is a Jamaican citizen and national and single mother of two children, ages 10 and 19. Dkt. No. 1 at 4, Dkt. No. 14 at 17. She lawfully entered the United States in November 2023 as a nonimmigrant visitor and remained in the country after that lawful status expired. Dkt. No. 1 at 4. Petitioner asserts, and Respondent does not dispute, that Petitioner has no criminal history anywhere in the world and was compelled to relocate to the United States (and eventually seek asylum) after she witnessed her boyfriend's shooting and was subsequently threatened with death. Dkt. No. 1 at 4–5.

On February 21, 2026, Petitioner was encountered by a U.S. Border Patrol agent in Mead, Washington, who initiated a vehicle stop based on observations of her driving behavior. *Id.* at 4. According to the agent's statement describing of that encounter, contained in Department of Homeland Security ("DHS") Form I-213:

> [Petitioner] was traveling approximately 20 miles per hour under the speed limit, causing me to quickly brake to avoid a collision. As I drove behind the vehicle, the car was observed crossing over both the solid white fog line as well as the double yellow dividing line of the roadway. The driver then accelerated to above the speed limit, suddenly braked hard while approaching Stoneman, activated the left turn signal toward Stoneman, came nearly to a stop, then swerved back into the main northbound lane, nearly causing an accident with other traffic. . . . Based upon my twenty-five (25) years of experience as a U.S. Border Patrol Agent, coupled with my prior experience as an Emergency Medical Technician (EMT) with both the U.S. Border Patrol and as a volunteer EMT, I determined that there was likely some form of impairment, either alcohol, narcotic or medical in nature which may be impacting the driver of the vehicle, posing a serious risk of injury to the general public. In the interest of public safety, I initiated a vehicle stop on Market near Florence. The driver yielded and came to a stop.

Dkt. No. 6-1 at 5. When questioned, Petitioner admitted that she had only a learner's permit to drive. *Id.* The agent requested a "wanted persons search" and learned that Petitioner had

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 2

overstayed her visa. *Id.* at 6. Petitioner was taken into Border Patrol custody and later transferred to the NWIPC. *Id.*; Dkt. No. 1 at 3. On April 16, 2026, nearly two months after Petitioner was detained, a bond hearing was held before Immigration Judge ("IJ") Tammy Fitting. *See* Dkt. No. 6-4 (Order of the Immigration Judge). Judge Fitting denied bail or conditional release upon finding that Petitioner poses both a flight risk and a danger to the public. *Id.* at 2.

Petitioner filed the instant habeas petition in this Court on April 19, 2026, and it was fully briefed on May 11, 2026. However, the Court issued an order on June 18, 2026, noting that Petitioner had raised an essential ground for relief only in her traverse and ordering her to show cause why her petition should not be denied for failure to raise a necessary claim. Dkt. No. 8 at 6. The Court directed that Petitioner could remedy the deficiency by filing a Statement of Additional Grounds. *Id.* at 5–6 (citing *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) ("In order for the State to be properly advised of additional claims, they should be presented in an amended petition or . . . a statement of additional grounds")). Petitioner filed a Statement of Additional Grounds (Dkt. No. 9), and the Court ordered Respondents to file a response by noon on July 1, 2026 (Dkt. No. 11). Respondent missed that deadline by several hours, but did file a response before 3 p.m. on the due date set by the Court (Dkt. No. 12), along with a supporting declaration of counsel (Dkt. No. 13) and two documents comprising the administrative record of Petitioner's bond proceeding (Dkt. Nos. 14, 14-1). Despite Respondent's lateness (which Respondent did not explain or even acknowledge), the Court will consider these submissions. The record is now complete, and the matter is ripe for consideration.

## II.    LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are entitled to relief, *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir.

2004)—that is, that they are "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c).

### III.   DISCUSSION

The habeas petition asserts the following claims:

(A)   "The Balance of Interests Under Mathews v. Eldridge Favors Release" (Dkt. No. 1 at 6);

(B)   "Petitioner's Detention Is Not Reasonably Related to Its Civil Purpose" (*id.* at 8);

(C)   "Petitioner's Removal Is Not Imminent and Her Detention Lacks a Definite Endpoint" (*id.* at 9); and

(D)   "Petitioner's Detention Is Constitutionally Unreasonable Under the Banda Multi-Factor Test" (*id.* at 10).

Petitioner also argues that she should not be required to exhaust her administrative remedies because "a post hoc bond hearing cannot cure Petitioner's unlawful detention . . . ." *Id.* at 12 (capitalization modified).

In the Statement of Additional Grounds, Petitioner adds one more claim alleging that her detention is unlawful:

(E)   "The Immigration Judge's Bond Determination Constitutes an Abuse of Discretion and Is Legally Deficient" (Dkt. No. 9 at 2 (capitalization modified));

She also argues, again, that exhaustion should not be required (*id.* at 8) and that release is the only adequate remedy (*id.* at 10).

"Courts in this District have consistently held that, irrespective of other alleged legal errors, petitioners are not entitled to habeas relief when an IJ finds a separate basis for their detention and that basis is unchallenged." *Valdovinos v. Blanche*, No. C26-706, 2026 WL 1091282, at *4 (W.D. Wash. Apr. 22, 2026) (collecting cases). Because a legally sound denial of bond or conditional release creates a new lawful basis for detention, the Court must first consider

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 4

Petitioner's claim that her bond proceedings were legally deficient. If they were not—that is, if the IJ's denial of bond was legally sound—claims relating to the unlawfulness of initial detention (such as Petitioner's first cause of action) become moot. This is because, while such claims might establish that Petitioner's *pre-hearing* detention was unlawful, it is her current detention that the Court must review. *See Walker v. Wainwright*, 390 U.S. 335, 336 (1968); *cf James v. Reese*, 546 F.2d 325, 328 (9th Cir. 1976) (where petitioner was presently serving criminal sentence, contention that he was wrongly denied bail "refers to a prior detention and is presently moot").

**A.      Abuse of Discretion / Denial of Due Process at Bond Redetermination Hearing**

Petitioner alleges that "the IJ's bond determination was arbitrary, legally deficient, and constituted an abuse of discretion" and that the IJ did not meaningfully consider the evidence presented by Petitioner or provide any "indication of the evidence considered or the basis for the IJ's conclusion." Dkt. No. 9 at 3. Respondent argues that the Court should require Petitioner to exhaust her administrative remedies by appealing to the Board of Immigration Appeals ("BIA") before seeking judicial review (*id.* at 3–6) and that "Petitioner has not shown that the immigration judge abused their discretion in denying bond, particularly when the limited nature of the record and the immigration judge's bond determination stems directly from Petitioner's tactical litigation choices" (*id.* at 11).

**1.      Subject Matter Jurisdiction**

In general, the Court does not have jurisdiction to review discretionary bond decisions. Specifically, 8 U.S.C. § 1226(e) states, "The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." However, Section 1226(e) does not

"preclude 'habeas jurisdiction over constitutional claims or questions of law.'" *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017) (quoting *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011)). As such, "a district court has jurisdiction to review an [immigration judge's] discretionary bond denial where that bond denial is challenged as legally erroneous or unconstitutional." *Soriano v. Hernandez*, No. C26-900, 2026 WL 969764, at *3 (W.D. Wash. Apr. 10, 2026) (alteration in original) (quoting *Kharis v. Sessions*, Case No. C18-4800, 2018 WL 5809432 *4 (N.D. Cal. Nov. 6, 2018) (collecting cases)); *see also Loya Medina v. Hernandez*, No. C26-772, 2026 WL 1260848, at *5 (W.D. Wash. May 7, 2026) ("Claims of constitutional injury, such as procedural due process violations[,] are . . . reviewable by a district court.").

A habeas court's review of an IJ's bond determination is for abuse of discretion. *Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024). "Under an abuse of discretion standard, '[a reviewing court] cannot reweigh evidence but can only determine whether the BIA applied the correct legal standard.'" *Id.* at 785 (citation modified) (quoting *Konou v. Holder*, 750 F.3d 1120, 1127 (9th Cir. 2014)). "When examining any evidentiary proceeding and the adjudicator's opinion, there are at least two ways to challenge whether the adjudicator applied the correct standard of proof." *Tavurov v. Noem*, No. C26-668, 2026 WL 1283513, at *6 (W.D. Wash. May 11, 2026) (quoting *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 240 (W.D.N.Y. Jan. 16, 2019)). "First, a challenge may be based on the contention that the decisionmaker erred because the evidence itself could not—as a matter of law—have supported the adjudicator's conclusion." *Id.* (quoting *Hechavarria*, 358 F. Supp. 3d at 240). "Second, it may be clear from the adjudicator's opinion itself that he simply did not apply the correct standard to the facts." *Id.* (quoting *Hechavarria*, 358 F. Supp. 3d at 240).

Petitioner argues that the bond hearing the IJ's decision "was arbitrary, legally deficient, and constituted an abuse of discretion" (Dkt. No. 9 at 3) and the order denying her bond "was

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 6

essentially a boilerplate, checked-box determination that reflects a predetermined outcome rather than a meaningful exercise of discretion" (*id.* at 2). Therefore, Petitioner's claims fall squarely within the Court's jurisdiction because she challenges the legality of her immigration bond proceeding and the resulting detention. *See Loya Medina*, 2026 WL 1260848, at *5.

### 2. Administrative Exhaustion

The Ninth Circuit has required, "as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). "The exhaustion requirement is prudential, rather than jurisdictional . . . ." *Hernandez*, 872 F.3d at 988. Courts in the Ninth Circuit consider the *Puga* factors when determining if prudential exhaustion is required, which include whether:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)). Even if the *Puga* factors establish that administrative exhaustion is required, a court may waive the exhaustion requirement if a petitioner demonstrates one of the following *Laing* factors apply, which include: (1) "administrative remedies are inadequate or not efficacious," (2) "pursuit of administrative remedies would be a futile gesture," (3) "irreparable injury will result," or (4) "the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (quoting *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 (9th Cir. 1981)).

In the instant matter, Petitioner points to the *Laing* factors, arguing that administrative remedies would be "futile or incapable of providing meaningful relief" (Dkt. No. 9 at 8 (citing *Laing*, 370 F.3d at 1000)) and that Petitioner "will suffer irreparable injury if h[er] clearly unconstitutional detention continues while [s]he awaits a BIA decision on the merits that may never come" (*id.* at 9). While the Court sees no evidence that BIA appeal would be futile in the long term, it would certainly be inadequate in light of the months-long waits Petitioner cites. *See id.* at 8. If Petitioner is correct that her detention is unlawful and her immediate release is required, even a successful BIA appeal process is no adequate substitute for the swifter redress available through the habeas writ. *See id.* at 22. A petition for writ of habeas corpus is "entitled by statute to special, preferential consideration to insure expeditious hearing and determination." *Van Buskirk v. Wilkinson*, 216 F.2d 735, 737–38 (9th Cir. 1954). This is for good reason: the Constitution cannot abide the prolonged confinement of a person who by law should be at liberty. Therefore, "[t]he application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from [her] within the four corners of the application." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000).

By contrast, the exhaustion of an administrative appeal of a bond denial typically takes "substantially longer" than six months. *See Vasquez Lopez v. Hernandez*, No. C26-775, 2026 WL 984151, at *2 (W.D. Wash. Apr. 13, 2026) (finding that statistics from 2026 show that the BIA appeal process is currently "substantially longer" than it was in 2024 when exhausting an administrative appeal required more than six months); *see also Soriano*, 2026 WL 969764, at *4 (finding, where petitioner brought habeas petition challenging his bond denial, "given the lengthy delays inherent in the current appeals process, the Court finds Petitioner will suffer irreparable injury if he is required to wait for a BIA decision before being permitted to file a habeas claim."). With these current processing times, "administrative remedies are inadequate or

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 8

not efficacious" for addressing Petitioner's claim. *Laing*, 370 F.3d at 1000. Petitioner agrees with Petitioner both that she should not "be required to appeal simply to obtain an explanation for her continued detention" (Dkt. No. 9 at 10) and that, if her appeal is ultimately successful, she will have suffered irreparable injury during the long wait.

Therefore, the Court waives the administrative exhaustion requirement.

### 3.    Merits of the Claim

When determining whether a noncitizen is a danger to the community or risk of flight, an IJ weighs nine factors, pursuant to BIA precedent. *See Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006); *see also Martinez*, 124 F.4th at 783. "These factors may include any or all of the following":

> (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen]'s length of residence in the United States; (3) the [noncitizen]'s family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen]'s employment history; (5) the [noncitizen]'s record of appearance in court; (6) the [noncitizen]'s criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen]'s history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen]'s manner of entry to the United States.

*Guerra*, 24 I. & N. Dec. at 40. "Bond determinations must bear a rational relationship between the governing legal standards and the facts and evidence in a given case." *Soto Gimenez v. Hernandez*, No. C26-966, 2026 WL 1156075, at *8 (W.D. Wash. Apr. 29, 2026).

The Immigration Judge who denied Petitioner's request for bond did not issue any written findings of fact or make any written record of the reasons for her decision. In a form order consisting only of checkboxes and an electronic signature, the IJ checked boxes indicating:

[X]ORDERED that the request for a change in custody status be denied.

[X]Danger to Community [X] Flight Risk

[X]OTHER: Conditional release is: [ ] granted [ ] denied [ ] was not requested

[X] Ability to pay considered

[X] Failure to appear and address requirements provided.

Dkt. No. 6-4 at 2. The Court also does not have access to any contemporaneous record of the proceedings and decision, and so has little information about the IJ's oral findings (if any were made). This absence is not Petitioner's fault. Bond hearings in Immigration Court are not required to be recorded, and the IJ in this case chose both not to record the proceedings and not to make any written record of the reasons for her findings—that is, to essentially make no record at all to facilitate judicial review, despite this Court's clear authority to review her decision for errors of law and constitutional violations.

This appears to be the standard policy at the Tacoma Immigration Court. This Court recently issued an order in a case where another IJ intentionally terminated a recording already in progress when he realized, two minutes into a hearing, that no District Court order was in place requiring a recording, stating, "I'm not gonna record the bond then. I just don't, I was confused. . . . [W]e're off the record. Or we're adjourned. Well, we're off the record." Petition for Writ of Habeas Corpus at 10 & n.4, *Saparali Uulu v. Scott*, C26-1631 (July 10, 2026). In light of this practice, Respondent's accusation that *Petitioner* is responsible for the "intentionally sparse record of the immigration judge's bond findings" because she sought habeas review instead of waiting months for a BIA appeal (which would have eventually required the IJ to prepare a post hoc memo justifying her findings) is very poorly taken. Dkt. No. 12 at 11.

Though lacking a record of the IJ's reasoning, however, the Court does have the boilerplate order (Dkt. No. 6-4) and the complete record of filings made to the immigration court in relation to the bond hearing (Dkt. Nos. 14 (Administrative Record) (Sealed), 14-1 (DHS

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 10

Notice of Evidence) (Sealed)). The Court also has the benefit of Ms. Currie's sworn declaration providing a firsthand account of the hearing. Dkt. No. 10. Consideration of "the evidence itself" is a sufficient basis for review of an IJ's decision for legal error where that evidence "could not—as a matter of law—have supported the adjudicator's conclusion." *Tavurov*, 2026 WL 1283513, at *6.

District courts in this Circuit frequently order immigration judges considering noncitizens in removal proceedings for release on bond to require the government to demonstrate, by clear and convincing evidence, that the noncitizen poses a flight risk or danger to the community. *See, e.g.*, *Zhou v. Scott*, No. C26-1779, 2026 WL 1830904, at *8 (W.D. Wash. June 25, 2026); *Martinez v. ICE Field Off. Dir.*, No. C26-1027, 2026 WL 1506123, at *4 (W.D. Wash. May 29, 2026); *Geler v. Blanche*, No. C26-481, 2026 WL 1251660, at *8 (W.D. Wash. May 7, 2026); *Quinonez Torres v. Hermosillo*, No. C26-76, 2026 WL 547591, at *11 (W.D. Wash. Feb. 23, 2026); *Delgado v. Rokosky*, No. C26-1460, 2026 WL 1481340, at *1 (D. Ariz. May 27, 2026); *Mendoza v. Noem*, No. C26-702, 2026 WL 927654, at *1 (E.D. Cal. Apr. 6, 2026). This "burden-shifting framework" derives from *Singh v. Holder*, in which the Ninth Circuit held that that standard applied in bond hearings for individuals subject to prolonged detention under 8 U.S.C. § 1226(a). *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing *Singh v. Holder*, 638 F.3d 1196, 1203–05 (9th Cir. 2011)). Although aspects of *Singh* have been abrogated or called into question by subsequent Supreme Court decisions, *see id.*, its burden-shifting framework continues to be extensively applied, and the case is still discussed as precedential by the Ninth Circuit. *See, e.g.*, *Martinez*, 124 F.4th at 779.[2]

---

[2] Although *Guerra* assigns a noncitizen seeking bond the burden of persuading a judge that their release is justified, that fact does not resolve the question of burden, because a decision of a Court of Appeals takes precedence, within the relevant circuit, over a competing opinion of the BIA—as the BIA itself has affirmed and reaffirmed. *See K-S-*, 20 I. & N. Dec. 715, 719–20 (BIA 1993) (citing, *inter alia*, *NLRB v. Ashkenazy Prop. Mgmt. Corp.*, 817 F.2d 74

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 11

District court orders requiring IJs to apply the *Singh* standard are binding on immigration judges and the BIA. *See id.* at 780 (where "the district court [had] ordered 'the government to show by clear and convincing evidence that [the petitioner] presents a flight risk or a danger to the community,' . . . the BIA properly noted that the government bore [this] burden[.]") At least one recent decision in this District suggests that the *Singh* standard still governs certain bond hearings in immigration court within this Circuit, even where no district court order explicitly directs an IJ to apply this standard, and an IJ errs in placing the burden on a noncitizen to prove they are not a flight risk. *See Haidari v. Scott*, No. C26-1655, 2026 WL 1628663, at *2 (W.D. Wash. June 5, 2026). However, *Guerra* places the burden on a noncitizen seeking bond to "establish to the satisfaction of the Immigration Judge and this Board that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight." 24 I. & N. Dec. at 38.

In this case, there is no record of the standard the IJ applied, or whether she assigned to the burden to the Government to prove that Petitioner posed a flight risk and/or a danger, or to Petitioner to prove that she did not. *See generally* Dkt. No. 6-4. The written record on Petitioner's motion for bond, however, includes an unrebutted argument for assigning the burden to the government. *See* Dkt. No. 14 at 10–12. While acknowledging that "the Ninth Circuit has left open the question of whether the government bears the burden of persuading the Judge[] that the Applicant is a flight risk or danger to the community," Petitioner marshalled persuasive authority that the government should bear the burden of persuasion, relying on the language of the INA, past BIA decisions, and Ninth Circuit cases discussing bond in both the immigration detention and criminal contexts. *Id.* Petitioner's citations included the BIA's holding that a

---

(9th Cir. 1987) in discussing "a federal agency's obligation to follow the law of a circuit court"); *Anselmo*, 20 I. & N. Dec. 25, 31 (BIA 1989).

noncitizen "generally is not and should not be detained or required to post bond except on a finding that he is a threat to the national security or that he is a poor bail risk." *Patel*, 15 I. & N. Dec. 666 (B.I.A. 1976) (citations omitted).

In the briefing on this habeas petition, Petitioner's allegation that the IJ "failed to apply the correct legal standard" (Dkt. No. 9 at 9) goes unanswered by Respondent except for a citation to a single district court case that in turn cites to *Guerra* without further analysis. Dkt. No. 12 (citing *Kim v. Mullin*, No. C26-805, 2026 WL 948347, at *2 (W.D. Wash. Apr. 8, 2026)). It does not appear that the question of burden was at issue in *Kim*, nor briefed by the Parties, so the Court gives little weight to this citation. *See United States v. Joyce*, 357 F.3d 921, 924-25 (9th Cir. 2004) ("In the absence of any holding or explanation whatsoever on the specific issue [this case] raises, we do not find [a previously decided case] to be instructive."). The facts remain that Ninth Circuit case law provides a strong precedent for burden-shifting at bond hearings, and Petitioner argued in her immigration court briefing that the government should bear the burden of showing she posed a flight risk or a danger. The government presented no written response and there is no evidence that the government attorney rebutted this argument at the bond hearing, or that the IJ considered the argument and rejected it. Ms. Currie does not recall the IJ "meaningfully engag[ing] with or analyz[ing] the evidence presented by Petitioner" or "identify[ing] any specific facts supporting a finding that Petitioner posed a danger to the community or a flight risk." Dkt. No. 10 ¶ 8.

Therefore, the Court assumes, for the purposes of Petitioner's April 16, 2026, bond hearing only, that the government should have borne the burden to show, by at least a preponderance of the evidence, that Petitioner posed a danger to the community or was likely to abscond if released.

Here, because no opinion of the IJ is available, "the question is whether the evidence that the IJ relied on at the bond hearing could—as a matter of law—establish that [Petitioner] posed a flight risk" and a danger. *W.T.M. v. Bondi*, No. C25-2428, 2026 WL 262583, at *4 (W.D. Wash. Jan. 30, 2026) (alteration in original) (quoting *Garcia v. Hyde*, No. C25-585, 2025 WL 3466312, at *7 (D.R.I. Dec. 3, 2025)). The Court finds that it could not.

Petitioner's attorney presented a brief in support of her motion for bond determination. Dkt. No. 14 at 2–13. Respondent did not file a response or opposition or make any written filings beyond submitting, without argument, Petitioner's DHS Form I-213. *See* Dkt. No. 14-1. In her briefs, Petitioner presented argument and/or evidence that addressed every one of the *Guerra* factors:

(1)    **Fixed address in the United States:** Petitioner has a fixed address in Springfield Gardens, New York. Dkt. No. 14 at 8.

(2)    **Length of residence:** Petition has been in the United States since she arrived in 2023. *See id.* at 5.

(3)    **Family ties and path to permanent residence:** Petitioner has a daughter and son currently in Spokane and an uncle and cousin in Mississippi. *Id.* at 8. She also has "a very strong support group of friends and family to encourage and to guide her if she is released." *Id.* at 5. She has applied for asylum and is entitled to such relief based on targeted death threats from gang members in Jamaica whom she reported to police after they shot her boyfriend. *Id.* at 4, 5.

(4)    **Employment:** Petitioner has filed a meritorious asylum application, which will allow her work authorization in the United States. She is supported by a sponsor who will assist her in finding work. *Id.* at 24. A letter of support from Petitioner's daughter suggests that she was working to support her family before her detention and was the main source of support for her children and mother. *Id.* at 19.

(5)    **Record of appearance in court:** Petitioner has never willfully failed to appear for scheduled immigration proceedings and is actively engaged with the immigration court. *Id.* at 9.

(6)    **Criminal record:** Petitioner has only ever been arrested when she was detained by ICE for her visa overstay. *Id.* at 10. She has no criminal convictions or arrests. *See id.*

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 14

**(7)** **History of immigration violations:** Petitioner entered the country lawfully in 2023 and has not been previously removed. *Id.* at 9.

**(8)** **Attempts to flee prosecution or authorities:** None: Petitioner "has never engaged in any flight to avoid prosecution." *Id.* at 9.

**(9)** **Manner of entry to the United States:** Petitioner entered the United States lawfully on a non-immigrant B2 visitor visa. *See id.* at 5.

Petitioner also submitted four letters of support attesting to her character. Three people who have known Petitioner for decades, two family members and a former teacher (now a Justice of the Peace in Kingston, Jamaica), wrote glowingly about her honesty and integrity. *Id.* at 20, 21, 22. Petitioner's teenage daughter Feianna emphasized Petitioner's hard work to support and protect her family and raise her children with strong values and education. *Id.* at 19. Feianna wrote: "She is not a danger to the community, she is simply a mother who wants to provide a better future for her children. . . . Granting her bond would allow her to return to her family while continuing to address her case." *Id.* Finally, Anthony Armstrong Grant, Jr., a U.S. citizen and a cousin of Petitioner's partner, wrote extensively to attest to her "excellent moral character," strong work ethic, self-reliance, and material support of many family members in the seven years he had known her. Mr. Grant confirms that Petitioner "does not engage in any criminal activity, has no vices and no criminal record" and that he is "certain" she poses neither a danger nor a risk of flight. *Id.* at 17–18. He provided his tax statements and indicated his willingness to serve as her sponsor and help her keep her commitments to the court. *Id.* at 17, 14–15.

None of Petitioner's facts or arguments were contradicted by DHS Form I-213 (the only evidence the government filed), and the government filed no written brief opposing her release. *See* Dkt. No. 14-1 at 3; *see generally* Dkt. No. 14. It is unclear from the record if the government attorney at Petitioner's hearing offered any argument on the *Guerra* factors at all; Ms. Currie recounts in her sworn declaration that "the Government primarily relied on a single incident in

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 15

which Petitioner was pulled over while driving erratically and acknowledged that she possessed only a learner's permit." Dkt. No. 10 ¶ 7. Respondent's briefing in this habeas case appears to assume that this incident was the basis for both the flight risk and dangerousness findings and points to no other possible basis for the IJ's decision. *See* Dkt. No. 12 at 11.

The traffic incident that led to Petitioner's detention cannot possibly support a finding that Petitioner poses a flight risk or a danger to the community. As for flight risk, the incident has no probative value that Petitioner is likely to abscond from removal proceedings, and is somewhat probative of the *opposite* conclusion: as soon as the Border Patrol agent initiated a stop, Petitioner "yielded and came to a stop" and appears to have cooperated with all law enforcement instructions and actions up to and including her arrest. *See* Dkt. No. 14-1 at 7–8. As for dangerousness, "[t]he *Guerra* factor most pertinent to assessing dangerousness is the [noncitizen]'s criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses." *Martinez*, 124 F.4th at 783 (citation modified). But Petitioner *has* no criminal record. Moreover, the mere existence of some criminal record is not enough. *Singh v. Holder*, 638 F.3d 1196, 1206 (9th Cir. 2011) ("*Guerra* contemplates that criminal history alone will not always be sufficient to justify denial of bond on the basis of dangerousness. . . . [N]ot every criminal record would support a finding of dangerousness.") Courts in this district have found that IJs abuse their discretion when they base a dangerousness finding on the mere existence of past arrests for minor, nonviolent offenses without "explain[ing] how these remote arrests outweigh the overwhelming evidence of [a noncitizen's] good character and community ties." *Garcia Miranda v. Hernandez*, No. C26-906, 2026 WL 1328227, at *4 (W.D. Wash. May 13, 2026); *see also, e.g.*, *Calderon-Rodriguez v. Wilcox*, 374 F. Supp. 3d 1024, 1027 (W.D. Wash. 2019) (Where basis for dangerousness findings was years-old DUI and vehicular assault convictions, "[t]he IJ erred as a matter of law

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 16

in failing to consider petitioner's flight risk and dangerousness on a current basis . . . [as well as] petitioner's sobriety and willingness to refrain from driving if he is released[.]") In short, something more than the simple fact of a criminal arrest or charge is required for a finding that a person poses a danger.

Petitioner's alleged episode of erratic driving is far, far less than a criminal history. The incident resulted in no criminal arrest *or even traffic citation*. The Border Patrol agent did not involve local police or report any suspected infractions to state authorities, and he arrested Petitioner only on the basis of her visa overstay. *See* Dkt. No. 14-1 at 7–8. While Respondent makes much of the I-213's account that "[t]he Border Patrol Agent pulled her over because he 'determined that there was likely some form of impairment, either alcohol, narcotic, or medical in nature which may be impacting the driver of the vehicle, posing a serious risk of injury to the general public'" (Dkt. No. 11 at 12 (quoting Dkt. No. 14-1 at 7)), the same form makes it abundantly clear that the agent was mistaken: Petitioner was a novice driver (Dkt. No. 14-1 at 7) with no medical or chemical impairment at all (*see id.* at 6 (Petitioner "claims to be and appears to be in good health.")). Even if the Border Patrol agent had really believed Petitioner was dangerously incapacitated, and even if that belief had been reasonable, a *reasonable but incorrect belief* has no probative value—as to Petitioner's dangerousness or anything else.[3] Finally, to the extent Petitioner only poses a "danger" due to her poor driving, this is a reason to impose driving-related conditions of release, not to lock her up for the remainder of removal proceedings.

---

[3] While the Court makes no findings as the Border Patrol agent's credibility, it cannot ignore the context in which this statement was made: Border Patrol agents "do not enforce traffic laws," *United States v. Valdes-Vega*, 738 F.3d 1074, 1080 (9th Cir. 2013), and cannot pull a vehicle over without pointing to "specific, articulable facts" providing reasonable suspicion that the person being stopped "has committed or is about to commit a crime," *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000), or poses a "safety hazard" or similar community threat, *cf United States v. Cervantes*, 703 F.3d 1135, 1141 (9th Cir. 2012) (discussing Fourth Amendment's "community caretaking exception" in the context of a property search).

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 17

Beyond this insufficient event, the Court cannot speculate as to what basis the IJ might provide if required to account for her finding. "Even in the absence of a contemporaneous record of Petitioner's bond hearing, . . . it is clear from the existing record in this case that the IJ's bond denial was constitutionally deficient, because there are no circumstances in which the IJ could plausibly establish that Petitioner posed a flight risk" or a danger. *W.T.M.*, 2026 WL 262583, at *4 (citing *Garcia*, 2025 WL 3466312, at *7). This is all the clearer where the government (who, again, filed no written materials beyond DHS Form I-213) should have borne the burden. The IJ simply could not, as a matter of law, have properly found that the preponderance of the evidence showed Petitioner was likely to abscond or posed a danger to the public. Indeed—"no matter where the burden was placed—no reasonable fact finder could review the record before the immigration judge" and reach the conclusions that she did. *Haidari*, 2026 WL 1628663, at *3.

A review of recent cases in this District shows immigration judges performing incredible mental gymnastics to turn ordinary human experiences and behaviors into evidence of a risk of flight. A petitioner with an asylum petition that another IJ had granted—but the government had appealed—was found to be a flight risk because he was a recent arrival who had previously traveled internationally. Order on Petition for Writ of Habeas Corpus at 4, *Mamo v. Hernandez*, C26-1696 (July 7, 2026) (Lin, J.). A petite woman was found without explanation to be a flight risk *and* a danger to the community, presumably based on a hearsay statement that she "was not cooperative and resist[ed]" when possibly unidentified agents approached her from behind in a grocery-store parking lot while she was loading her car. *Vasquez Lopez*, 2026 WL 984151, at *1, 3 (Zilly, J.). A court reviewing the evidence presented at another bond hearing with no recorded reasoning or findings had "no other choice but to conclude that [a previously] recalled [bench] warrant was the basis for the IJ's denial of bond." *W.T.M. v. Bondi*, 2026 WL 262583, at *4 (Jones, J.). A man with no criminal history or record of failing to appear was found to be a flight

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 18

risk because he entered the United States without authorization 25 years before and used a false social security number to pay his taxes. *Soriano*, 2026 WL 969764, at *5 (Estudillo, C.J.). In the case discussed above where the IJ terminated a recording in progress, his line of questioning (as recalled by an eyewitness) suggests the IJ found a student to be a flight risk because he lacked a wife and children—despite the fact that he was just twenty years old—and employment—despite the fact that his student visa would not have permitted him to work. Order on Petition for Writ of Habeas Corpus at 16, *Saparali Uulu*, C26-1631 (Lin, J.).

These gymnastics are not jurisprudence. Time and time again, courts have found that "no reasonable, impartial decisionmaker could conclude that" the record presented to an IJ supported a flight risk or dangerousness finding, but the IJs entered the finding anyway. *Vasquez Lopez*, 2026 WL 984151, at *3. In some cases, like this one, the IJ entered such a finding even where "the record does not reflect *any* reason Petitioner would be considered a flight risk," *Lima Gamez v. Hernandez*, No. C26-1104, 2026 WL 1382362, at *5 (W.D. Wash. May 18, 2026) (Tsuchida, M.J.) (emphasis added). As the courts reviewing all these orders found, these IJs abused their discretion when they made these unreasonable findings.[4] Here, too, the IJ abused her discretion when she found, purportedly on the evidence presented to her (none of which is probative of flight risk or danger), that Petitioner poses a risk of flight and a danger to the community.

In light of the absence of any record of the IJ's reasoning, "[t]he Court is left to speculate concerning how the immigration judge viewed the evidence in light of the applicable factors." *Vasquez Lopez*, 2026 WL 984151, at *3. Here, where the IJ was presented with unrebutted evidence that the *Guerra* factors favor Petitioner and no evidence (and perhaps no argument) that

---

[4] One caveat to this statement is required: in *Lima Gamez*, where the flight risk finding provided an alternative basis for a (legally erroneous) finding that the petitioner was subject to mandatory detention, the reviewing Court actually found that "[t]he absence of a contemporaneous record makes it impossible for the reviewing court to determine whether the immigration judge committed legal or constitutional error," and this absence itself invalidated the finding as a lawful basis for detention. 2026 WL 1382362 at *5–6. While this Court takes a different approach, the result is the same.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 19

any factor does not, "[t]he Court must conclude that the immigration judge failed to [consider the evidence before her], which constitutes an abuse of discretion." *Id*. at *3. The finding that Petitioner poses a danger despite no history of violence or crime is particularly unreasonable, and the Court is aware of no authority that would support it. The finding that Petitioner, shown through the evidence to be a hardworking single mother, is likely to abscond from removal proceedings is completely unexplained.

In sum, the IJ reached a conclusion untethered to the evidence before her and erred as a matter of law in finding Petitioner poses a flight risk and in denying her bond. Because of this, the proceeding was fundamentally deficient, and Petitioner was denied due process of law. Accordingly, the Court finds that Petitioner is currently in custody in violation of the laws or Constitution of the United States and is entitled to habeas relief.

### 4.    Appropriate Remedy

District courts have "a fair amount of flexibility" in fashioning specific habeas relief. Here, Petitioner was denied due process of law and kept in detention based on an unsubstantiated (and incomprehensible) "flight risk" finding. In line with other courts in this District, and given the present circumstances, "the Court finds no basis for Petitioner's continued detention and concludes immediate release with reasonable conditions of supervision is the appropriate remedy." *Soriano*, 2026 WL 969764, at *6; *see also Tavurov*, 2026 WL 1283513, at *10 (finding IJ abused discretion in denying bond and ordering immediate release); *Loya Medina*, 2026 WL 1260848, at *8–9 (same); *Vasquez Lopez,* 2026 WL 984151, at *3 (same). Accordingly, the Court orders Petitioner's immediate release.

//

//

//

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 20

**B.      Remaining Claims for Habeas Relief**

Because the Court grants the habeas petition on the basis of legal error and denial of due process at her bond hearing, success on Petitioner's remaining claims would afford her no additional relief, and the Court does not address them.

**C.      Request for Injunctive Relief**

Petitioner requests, without argument, injunctive relief in the form of court-imposed conditions on any future attempt by Respondents to detain her. Dkt. No. 1 at 14. Because the standards for injunctive relief are not addressed, the Court does not consider this request.

## IV.      CONCLUSION

Accordingly, Petitioner's Petition for Writ of Habeas Corpus (Dkt. No. 1) is GRANTED IN PART and DENIED IN PART. It is hereby ORDERED:

    (1)      Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them:

        (a)      SHALL release Petitioner from detention **within twenty-four (24) hours** of this Order under appropriate conditions of release;

        (b)      SHALL submit to the Court, **within forty-eight (48) hours** of Petitioner's release from detention, a declaration or status report confirming that Petitioner has been released from custody and informing the Court of the date and time of her release.

    (2)      Petitioner's request for injunctive relief is DENIED.

//

//

//

//

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 21

(3)     Any motion requesting fees should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. The Court strongly encourages the Parties to meet and confer prior to the filing of any such motion.

Dated this 17th day of July, 2026.

Tana Lin
United States District Judge

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 22